IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDMUND ROBACZEWSKI, | : | Case No. 4:14-CV-01686 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

August 18, 2015

## I. Introduction

Plaintiff, Edmund Robaczewski ("Robaczewski ") has filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   ECF No. 1. Disability benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.   The last date that a claimant meets the requirement of being insured is

commonly referred to as the "date last insured." Robaczewski met the insured status requirements through December 31, 2013.  Tr. 15.[1]

## II. Statement of Relevant Facts

Robaczewski is 45 years old, has a 9th grade education with a GED , and is able to read, write, speak, and understand the English language.  Tr. 53, 67-68, 175.  Robaczewski's most recent past relevant work was as a truck driver which is considered medium duty, semi-skilled.  Tr. 22, 68.  Robaczewski stopped working on July 1, 2010 when he was terminated and alleges disability as of November 1, 2010 due to arthritis, hip/back pain, anxiety, depression, and alcohol abuse.  Tr. 53, 138, 142, 174.

## A. Robaczewski's Mental Impairments

In an initial reception screening for State Correctional Institution- Camp Hill, Robaczewski informed staff that he had previously been diagnosed with depression and bipolar disorder. Tr. 225.  Robaczewski reported that he had twice attempted to commit suicide as a result of depression.  *Id*.  In a subsequent psychiatric evaluation, Robaczewski was diagnosed with severe and recurrent major depressive disorder, alcohol and marijuana dependence.  Tr. 248-49, 225. He stated that he had been treated for Bipolar Disorder for the last 15 years.  Tr.

---

[1] References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

249.  Robaczewski also reported that he was in a psychiatric hospital six times and had one serious suicide attempt in 1993 when he shot himself in the face.  *Id*.

On February 9, 2011, Robaczewski was taken to the emergency room after he expressed suicidal ideation to a police officer.  Tr. 277.  The officer reported that Robaczewski had informed him that he had overdosed on cyclobenzaprime tablets and intended to hurt himself.  Tr. 276-78.  Nurses were unable to obtain a complete history because Robaczewski refused to answer questions and responded with "none of your fuckin business."  Tr. 279.  He was aggressive, verbally abusive and placed in 4 point leather restraints after making multiple verbal threats to injure staff and himself.  *Id*.  Nurses also noted that Robaczewski appeared to be "acutely" intoxicated.  Tr. 280, 283.

After his condition was deemed to be stable, Robaczewski was transferred to First Hospital Wyoming Valley for long term care.  Tr. 254, 283.  At the time of admission, Robaczewski denied any suicide attempt and his chief complaint was taking a muscle relaxant to relieve back ache caused by chopping ice.  Tr. 254.  A mental status examination showed that Robaczewski was alert with no overt evidence of psychotic features, aggressive or assaultive manners.  *Id*.  He admitted to smoking half a pack to one pack of cigarettes daily, drinking six to eight cans of beer per day and smoking marijuana occasionally.  *Id*.  He was discharged one week later and was diagnosed with major depression, recurrent type and alcohol

abuse.  Tr. 252.  His prognosis was described as "fair to good with treatment" because Robaczewski was willing to continue medication and follow up with Community Counseling Services.  Tr. 253.

In April 2011, Robaczewski sought help from the emergency room, complaining of shortness of breath.  Tr. 262-68.  A mental status examination revealed that he was fully oriented with a normal affect.  Tr. 263.  Robaczewski was uncooperative and insisted on leaving the "AMA" and stated "get this shit out of me".  Tr. 264.  When pressed to stay by his companion, Robaczewski stated "it's my decision, I will see Dr. Wolanin on Monday."  *Id*.

In July 2011, Robaczewski was evaluated by Vincent A. Drapiewski, M.D., for his physical complaints.  Tr. 290-301.  Robaczewski admitted that the drank one case of beer per week and smoked one pack of cigarettes per day.  Tr. 291.  Dr. Drapiewski's neurological assessment revealed that Robaczewski had a normal affect and did not appear to be depressed.  *Id*.  Dr. Drapiewski noted that Robaczewski had a history of bipolar disorder and depression.  Tr. 292.  Nevertheless, Dr. Drapiewski opined that Robaczewski could perform work at the light level of exertion with environmental restrictions.  Tr. 296-97.

In September 2011, Robaczewski had a psychological consultative examination with Frank James Vita Ph.D.  Tr. 306-09.  Robaczewski reported that he had been diagnosed with bipolar disorder and depression, and claimed that he

had Obsessive Compulsive Disorder ("OCD.")  Tr.  307.  He reported drinking a 12 pack of beer per day.  *Id*.  His mental status examination revealed that Robaczewski's mood was anxious.  Tr. 308.  His thought process was generally logical and coherent and there were no overt indications of delusional thinking.  *Id*. Robaczewski's demeanor during the interview was cooperative and gave no indication of hostile or violent behavior.  *Id*.

Dr. Vita  diagnosed Robaczewski with bipolar disorder, most recent episode mixed and alcohol dependence.  Tr.  308.  He assigned Robaczewski with a Global Assessment of Functioning ("GAF") of 51-60.[2]  *Id*.  Dr. Vita also diagnosed Robaczewski as having severe occupational problems, economic problems, and problems related to the social environment.  *Id*.  Dr. Vita opined that Robaczewski would likely benefit from weekly outpatient drug and alcohol counseling to address his symptoms as well as psychiatric medication evaluation/management. *Id*.  He also recommended that Robaczewski attend Alcoholics Anonymous meetings. *Id*.

Dr. Vita also completed a medical source statement indicating that Robaczewski had "moderate" restrictions in understanding, remembering, and carrying out short, simple instructions, but "marked" or "extreme" limitations in all

---

[2] A GAF score between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning.  The American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders, 32 ( 4th ed. 2000)

other areas of mental work functioning.   Tr. 304.   Dr. Vita opined   that Robaczewski would have marked limitations in interacting appropriately with the public, coworkers and in responding appropriately to work pressures and to changes in the routine work setting.  *Id*.  Dr. Vita also indicated that Robaczewski would have extreme limitations when interacting with supervisors. *Id*.

When asked if his opinion would change if Robaczewski was totally abstinent from alcohol and or substance abuse, Dr. Vita indicated that Robaczewski "would likely be more able to exhibit competent behaviors in all contexts." Tr. 305.  He also opined that Robaczewski's alcohol and substance abuse affected his judgment and ability to carry out tasks.  *Id*.

On September 27, 2011, James Vizza, Psy. D., a state agency consultant completed a residual functional capacity "RFC" assessment based on Robaczewski's medical records.  Tr. 83-98.  He opined that Robaczewski had "moderate" limitations in activities of daily living, social functioning, and concentration, persistence, and pace.  Tr. 91.  Dr. Vizza also opined that when not using alcohol, Robaczewski, "is able to maintain socially appropriate behavior ..." Tr. 95.  Dr. Vizza stated that Robaczewski could function in production oriented jobs requiring little independent decision making and sustain an ordinary routine without special supervision.  Tr. 95.  Dr. Vizza explained that he gave the opinion

of Dr. Vita's appropriate weight, but that some of the opinions in the report were an overestimate of Robaczewski's functional restrictions.  Tr. 96.

On September 21, 2011, Robaczewski then sought treatment with Kenneth H. Tomczyk, D.O., of Mountain Top Family Practice.  Tr. 332.   He reported that he was "very depressed and occasionally had suicidal ideations."  *Id*.  Dr. Tomczyk diagnosed him with depressive disorder and prescribed Remeron.  Tr. 333.   A week later, Robaczewski returned for a follow up visit with Dr. Tomczyk.  Tr. 322. Robaczewski reported drinking fifteen to twenty-five bottles of beer per day.  *Id*. He also reported having "shakes and sweats" if he did not have a beer.  *Id*. Robaczewski indicated that his mood had improved and he had an appointment with a counselor.  *Id*.  Dr. Tomczyk diagnosed chronic alcohol dependence for which he prescribed Naltrexone and Librium.  Tr. 324.

At his next visit on October 13, 2011, with Dr. Tomczyk, Robaczewski indicated that he was still drinking twelve beers per day, was yet to start taking Naltrexone or Librium, and did not make an appointment with counseling services. Tr. 316.  Dr. Tomczyk's chronic alcohol diagnosis remained unchanged and he advised Robaczewski to start the medication as directed.  *Id*.  Robaczewski returned to Dr. Tomczyk in November 2011, where he reported that he had decreased his alcohol intake.  Tr. 384-85.  He was advised to continue with Naltrexone and prescribed Risperdal for his mood disorder.  Tr. 385.  In December

2011, Robaczewski returned for a follow up visit, and there he reported that he was back to drinking ten to twelve beers per day and stopped taking the Naltrexone because it was making him sick.  Tr. 396.  Robaczewski also admitted that he had not been attending counseling. *Id*.   He was advised to continue with his medications and attend counseling.  Tr. 398.

Robaczewski returned to Dr. Tomczyk in January 2012 where he indicated that he didn't want counseling services from Northeast Counseling Services.  Tr. 405.  He also reported that he had decreased his alcohol intake to two glasses of vodka per day.  *Id*.  In March, Robaczewski reported to Dr. Tomczyk that he was drinking up to five glasses of vodka per day and ran out of Naltrexone.  *Id*. Robaczewski returned the following month and stated that he had not had a drink in 2 days but had  previously been drinking eight glasses of vodka per day for the past 2 weeks.  Tr. 460.

In August 2012, Robaczewski sought to establish primary care with Sergey Turchin, M.D. in  Florida.[3]  Tr. 576.  Robaczewski reported that he was drinking six to twelve beers and smoking one pack of cigarettes per day.  Tr. 577.  Dr. Turchin recommended a referral to psychiatry for Robaczewski's bipolar disorder and counseled decreased alcohol use.  Tr. 577, 579.

---

[3] Robaczewski testified at the hearing that he was recently married and moved to Florida with his wife. When asked if he wanted his case transferred to Florida, he indicated that even though he was now a Floridian, he wanted his case to remain in Pennsylvania.

Robaczewski sought treatment at Coastal Mental Health Center with Christian Crissom, M.D. in February 2013. Tr. 605-16. The initial bio-psychosocial assessment indicated that Robaczewski had a current GAF score of 60 and that Robaczewski was "very bright". Tr. 615. Shortly thereafter, Robaczewski underwent a psychiatric evaluation. Tr. 605-07. He was found to be calm, cooperative with a labile mood and affect. Tr. 606. Robaczewski reported that he had not been on any medication for almost eight months. Tr. 605. Dr. Crissom noted that Robaczewski's attention, concentration, memory, abstraction, insight, judgment, intellectual function, and impulse control were fair. Tr. 607. He diagnosed Robaczewski with bipolar disorder and post traumatic stress disorder. *Id*. Dr. Crissom assigned a GAF of 52. Tr. 615.

### B. Vocational Expert Testimony

At the hearing, Ms. Terry, an impartial vocational expert ("VE"), was called to give testimony. Tr. 67. The ALJ asked Ms. Terry to assume a hypothetical individual who was able to work at the light exertional level[4] who would be limited to occasional climbing of stairs, and no ladders, ropes, or scaffolds. Tr. 68. The

---

[4] Light Work is defined by the regulations of the Social Security Administration as work "with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967.

individual was also to avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; and hazards such as moving machinery and unprotected heights. *Id*. The individual was limited to simple  routine tasks in a low stress environment defined as occasional decision making and occasional changes in the work setting. *Id*. The individual would also need to have occasional interaction with the public as well as coworkers and supervisors. *Id*.

Under this hypothetical, Ms. Terry testified that the individual would not be able to perform Robaczewski's past relevant work. Tr. 68. However, the individual would be able to perform three jobs that exist in significant numbers in the national economy: cafeteria attendant, hand garment trimmer and light products packer. *Id*. The ALJ limited this hypothetical individual to requiring only two hours of standing and walking throughout the work day and to lifting and carrying within a sedentary exertion. Tr. 69-70. Ms. Terry reduced the number of available jobs for a light products packer by fifty percent, eliminated the cafeteria attendant position entirely to account for the two hour standing and walking option mandated by the ALJ. Tr. 70. The hand garment trimmer position numbers remained unchanged. *Id*. Ms. Terry also identified an additional position, a retail marker, that this hypothetical individual could perform under the two hours sitting and walking restriction. *Id*. With the lifting and carrying within a sedentary exertion

limitation, Ms. Terry opined that the hypothetical individual could work as a telephone order clerk, a lamp shade assembler, or a clerical assistant.  Tr. 70.

### C. The ALJ's Decision

At step one, the ALJ found that the Robaczewski was not engaged in substantial gainful activity since November 1, 2010.  Tr. 15.  At step two, the ALJ found that Robaczewski had the following severe impairments: depressive disorder/major depressive disorder, chronic alcohol dependence, chronic obstructive pulmonary disease with emphysema, tracheal stenosis, bipolar disorder, attention deficit hyperactivity disorder, panic disorder, obsessive-compulsive disorder. *Id*.

At step three, the ALJ found that Robaczewski did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§404.1520(d), 404.1525 and 404.1526) Tr. 15.   Robaczewski's mental impairments were considered under the criteria of Listings 12.04, 12.06, 12.08, and 12.09 in which the ALJ concluded the mental impairments did not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation.  Tr. 17.

At step four, the ALJ determined that Robaczewski had the RFC to perform light work as defined in 20 CFR §404.1567(b) and 416.967(b) except Robaczewski

was limited to occasional climbing of stairs but he must never climb ladders, ropes, or scaffolds.  Tr. 18.  Robaczewski was to avoid temperature extremes of cold/heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as moving machinery and unprotected heights.  Tr. 18.  Robaczewski was limited to simple routine tasks performed in low stress environment defined as involving no more than occasional decision making and occasional changes in the work setting.   The ALJ also found that Robaczewski was limited to occasional interaction with the public, coworkers, and supervisors.

At step five, the ALJ based her decision on the VE's testimony that an individual of the same age, education, work experience, and RFC could perform the representative occupation of cafeteria attendant, light products packer,  and a hand garment trimmer.   Finally based upon the testimony of the VE, and a hypothetical question that the ALJ posed to her, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Robaczewski could perform.  Tr. 22.  Therefore,  the ALJ concluded that Robaczewski was not disabled within the meaning of the Act.  Tr. 23.

### III. Discussion

In an action under 42 U.S.C. §405(g) to review the Commissioner's decision denying a plaintiff's claim for disability benefits, the district court must uphold the findings of the Commissioner so long as those findings are supported by

substantial evidence.  Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 (3d Cir. 2008).

Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. *See* 20 C.F.R. § 404.1520; *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *See* 20 C.F.R. § 404.1520. The initial burden to prove disability and inability to engage in past relevant work rests on the claimant; if the claimant meets this burden, the burden then shifts to the Commissioner to show that a job or jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason*, 994 F.2d at 1064.

## A. Step Three of the Sequential Evaluation Process

Robaczewski first argues that the ALJ erred at step three in finding that his severe mental impairment of depression and bipolar disorder did not meet or equal

one of the Listings.  Additionally, Robaczewski argues that the ALJ erred by failing to discuss the medical equivalence of the listing.

### 1. The ALJ Properly Determined that Robaczewski did not have an Impairment that meets a Listed Impairment

At step 3, the ALJ must determine whether the claimant's impairment matches or is equivalent to one of the listed impairments.  *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119 (3d Cir. 2000) .  The listings described impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity.  *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000).  "If the impairment is equivalent to a listed impairment, then the claimant is per se disabled and no further analysis is necessary."  *Burnett*, 220 F. 3d at 119.  The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record, explain his findings at step 3 and include an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments."  *Burnett* 220 F.3d at 120, n.2.  In general, the required level of severity for these disorders may be established when the criteria for both parts A and B of the listing are satisfied.[5]

---

[5] The part A criteria are medical findings that substantiate the presence of the mental disorder; the part B criteria are functional limitations resulting from the impairment that are incompatible with the ability to do any gainful work. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

To satisfy the paragraph B criteria, the claimant must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. part 404 Subpart P, App. 1.  "A 'marked' restriction or difficulty is one that is more than moderate but less than extreme and that 'interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.'  *Cunningham v. Comm'r of Soc. Sec.,* 507 F. App'x 111, 116 (citing 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C)).  Here, as required, the ALJ properly identified the relevant Listings and determined that Robaczewski failed to meet the "B" criteria of the identified Listings.

Robaczewski, however, contends that the ALJ's findings with respect to two categories in Paragraph B criteria— social functioning and maintaining concentration, persistence and pace—are erroneous, and asserts that Robaczewski's limitations in these areas are "marked" rather than "moderate."  Robaczewski contends that he is highly antagonistic, uncooperative and hostile which is indicative of  "marked" limitations within social contexts.  He cites anecdotal observations from an emergency room visits  occasioned by his alleged suicide attempt.  Robaczewski however fails to include that he appeared to be visibly

intoxicated and was restrained because he threatened to hurt himself and hospital staff.   Robaczewski also refers to a second visit to the emergency room where he was uncooperative during his medical examination.   These incident do little to undermine the ALJ's conclusions at step three.   The ALJ's assessment of Robaczewski's social functioning reflects his condition longitudinally not in isolation.   Robaczewski has not provided evidence which would undermine the ALJ's conclusion that Robaczewski mental impairment does not meet the requirements of the listing.   While Robaczewski may have been in poor mental states during these visits, nothing in the record reflects that these difficulties lasted for the required 12 month minimum time frame.

Robaczewski also argues that the ALJ's reference to his ability to watch television and read daily is not sufficient to contradict the definition of marked difficulties in concentration, persistence, and pace.   Robaczewski however fails to point to any objective evidence in the record that contradicts the ALJ's determination.   The burden is on the claimant to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. *Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir. 1992).   This burden is particularly high at step three.   Robaczewski's argument is insufficient to undermine the substantial evidence that support the ALJ's conclusion.

**2.  ALJ failed to discuss medical equivalence of the Listings at Step 3**

Next, Robaczewski argues that the ALJ erred by not considering the combined effects of his impairments and conducting a proper combination analysis.  Indeed the extent of the ALJ's combination analysis was the statement that "[t]he claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 16. While the ALJ adequately reviewed each of Robaczewski's impairments individually, this statement regarding Robaczewski's impairments in combination is overly broad and too generalized.  *See Torres v. Comm'r of Soc. Sec.,* 279 F. App'x 149, 152 (3d Cir. 2008)(holding that '[c]onclusory statements, like the one in this case, have been found to be 'beyond meaningful judicial review'" and remanding because the 'entire combination analysis consisted of one cursory paragraph.')

In this case, the ALJ found eight severe impairments at step two.  Tr. 15. The ALJ's blanket statement that the combination of these impairments does not medically equal any listed impairments is insufficient. Without a more detailed explanation of the reasons and facts underlying the ALJ's conclusion, the Court lacks a reasonable basis upon which to review.  Therefore, the Court remands the case for a detailed step three analysis that considers whether Robaczewski's impairments in combination are or not equivalent in severity to a listed

impairment.  On remand the ALJ shall fully develop the record and explain her findings at step three, including an analysis of whether and why all of Robaczewski's severe impairments in combination are or are not equivalent in severity to one of the listed impairments.

## B. The Residual Functional Capacity Assessment.

Robaczewski next argues that the ALJ failed to accord proper weight to Dr. Vita's opinion and to incorporate all of his limitations when determining the RFC.

### 1. Evaluation of Opinion Evidence

The ALJ gave limited weight to the opinion of Dr. Vita, reasoning that the Dr. Vita's statements were inconsistent with the longitudinal treatment records and with the doctor's own GAF assessment and the GAF assessment of 60 noted in Robaczewski's most recent psychosocial assessment in February, 2013.  Tr. 20. The ALJ remarked that at the time of Robaczewski's examination with Dr. Vita, he was drinking heavily and was taking no medication.  Tr. 21.  Furthermore, the ALJ explained that it was reasonable to conclude that with the recent reduction in his alcohol consumption, Robaczewski had an even greater RFC than set forth. Consequently, she could not accommodate greater functional limitations as described by Dr. Vita.

Robaczewski asserts that the ALJ should not have credited the GAF score Dr. Vita assigned to him because as per the Administration's Messages, GAF scores are not a reliable rating due to "great variability of training and experience levels among clinicians."  Social Security Administration, Administrative Message AM-13066, *Global Assessment of Functioning (GAF) Evidence in Disability Adjudication* (July 22, 2013).  Nevertheless as an ALJ is required to consider all of the evidence, a GAF score is relevant in making a disability determination.  *See Colon v. Barnhart,* 424 F.Supp. 2d 805, 812 (E.D.Pa. 2006) (Although a claimant's GAF score does not have a " 'direct correlation to the severity requirements,' ... [the GAF score] remains the scale used by mental health professionals to 'assess current treatment needs and provide a prognosis.' Therefore, the GAF score [is] medical evidence ... and must be addressed in making a determination regarding a claimant's disability.") (quoting 65 Fed. Reg. 50764–65)); *Dougherty v. Barnhart,* No. Civ.A. 05-5383, 2006 WL 2433792, at *9 (E.D. Pa. Aug 21, 2006); *Brooks v. Colvin,* No. 3: CV-13-937, 2015 WL 2339117, slip op. (M.D.Pa. May 13, 2015)(Kosik, J.)  Here, not only did the ALJ demonstrate that she weighed the importance and seriously considered the GAF score, she gave a reasonable explanation for discounting the score.  Tr. 17.

However, this does not mean that  the entirety of the ALJ's RFC analysis was not at fault.  In making a disability determination, an ALJ has a duty to

develop the record fully and fairly.   *See e.g., Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995); *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 559 ( E.D. Pa. 1998); *see also* 20 C.F.R. 404. 1512(d)-(f)(2007).   Sometimes, this duty requires the ALJ to order an additional consultative examination to more fully develop the record.   *See* 20 C.F.R. §404.1519(a)(b)(4)(2007).   A consultative examination is "require[d]" when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, ... or [t]here is an indication of a change in [the claimant's] condition that is likely to affect [his or her] ability to work, but the current severity of [the] impairment is not established." *Id.* § 404.1519(a)(b)(4)-(5).

Here, the ALJ did not fulfill her duty to fully develop the record and should have requested an additional examination to compare with Dr. Vita's evaluation. In this instance, the ALJ engaged in pure speculation when she concluded that Robaczewski's recent decrease in alcohol consumption affected  his functional limitations.  As the Third Circuit has noted,  "[a]n ALJ may not make speculative inferences from medical reports or employ her own expertise." *Plummer v. Apfel*, 186 F. 3d 422, 429 ( 3d Cir. 1999).  *Id*.  Under these circumstances, the ALJ should have ordered an additional consultative examination; such an examination was necessary and would have provided a better indication of Robaczewski's current mental health and the resulting functional limitation.

Accordingly, the Court will not address Robaczewski's other substantive arguments that the ALJ inappropriately discounted Dr. Vita's report and the RFC assessment described therein.   In the absence of a record fully and fairly developed, the Court must remand the case.

### C. Step 5 of the Sequential  Evaluation Process

Because remand is otherwise required for reconsideration of earlier steps in the sequential process, further proceedings may well lead to a determination that Robaczewski has lesser limitations which were not previously credited and/or considered.  Therefore, additional VE testimony may be called for and a decision on this issue is not required at this time

### IV. Conclusion

For the forgoing reasons, the final decision of the Commissioner is **VACATED** and **REMANDED** for further proceedings in accordance with this Opinion.  An appropriate Order will be entered.


BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge